First case is Diane Sill v. Donnie Hancock. And would the attorneys please... Now who's representing the appellant? And it's Mr. Guy signed on the wrong line. He confused me. Oh, but that's why I had to ask. So when you're ready, why don't you approach the podium and begin. May it please the court, counsel, everyone present. My name is Dan Bronke. I'm an associate with Jim Hanson. I represent the appellants to the Hancocks. There is a long list of facts in this case, quite lengthy. I'm not going to go over them, but I believe there are several points that are quite important and need to be readdressed. The first one was that there was an oral agreement between the parties, between Ms. Sill and the Hancocks. The agreement was Ms. Sill would provide materials, the Hancocks would provide labor, and a house would be built. Second, Ms. Sill was acting as the general contractor. She wasn't the owner off to the side that hired someone special to do it. She was the one who was going to be the general contractor. The Hancocks were to frame and do what those things they were supposed to do. Third, the total damages asked for only appear in a post-trial memorandum. The total sum of damages were not presented to the court on the final day saying, I asked for the total sum of 24 XYZ. Those only came after the fact. And most importantly, which I believe the trial court awarded Ms. Sill the total amount of damages, not a penny less of what she asked for. This memorandum that was submitted, rubber stamp, there you go, you get everything that was asked for. The first issue we brought on the field was that this award of damages and the judgment for Ms. Sill was against the manifest way of the evidence. Now I will admit that in the brief of Mr. Terlizzi, he does state in the correct law that the trial court is in the superior position to hear the evidence, the testimony. The trial court is the one in the superior position to hear the evidence, to see what's going on, and to make the determination of what should be ruled in here. Not us, not everyone else. They are the best person. That decision is only overturned if it's against the manifest way. We believe that's the case here. This total award of damages that Ms. Sill asked for was unsupported by both the evidence and the testimony. And at times was directly contradicted by the testimony of people, witnesses called by Ms. Sill. Now there was some evidence presented. There were figures given. It's not a random number pulled out of the air. But most of the time those were quotes or estimates. For those quotes and estimates, there was little to no testimony dividing out who was responsible party for what. For example, Mr. Purcell testifies as to, in the trial court, that additional circuits had to be run in the kitchen. No testimony was provided that these were not faulty wiring of the Hancocks or that these were originally contemplated. If the original agreement was Ms. Sill was going to provide the materials and the Hancocks the labor, and these were circuits that were supposed to have been put in and for whatever reason were not put in by the Hancocks, why are they liable for the damages to pay for those materials? If it was proven by testimony or evidence that in fact they had somehow done a bad job and they needed to be replaced, that's a different story. But there was never any testimony showing that these additional circuits weren't contemplated in the trial court. Therefore, the Hancocks should not have been liable for that. Another portion of Mr. Purcell's testimony, he testifies about his lump sum figure was for finished wiring. The original contract, going back to the beginning, talks about the Hancocks were to do rough wiring. But yet damages are awarded for finished wiring. I'm not an electrician, I don't know what the details are, but I think finished wiring is different from rough wiring. Why are the Hancocks being held responsible for something that there was no testimony setting out what portion of this sum that Mr. Purcell claims was damages as finished wiring? There was no testimony presented. Mr. Crawford, another individual who testified, there was two points he made. One, he presented some. Part of this he had already been paid for. The trial court awarded the total amount. But he had said in testimony that he had been paid for part of the work he had already been done. Never stated what work was done. We don't know if this was work contemplated as a fixing of a default work by the Hancocks, repairing something, or this was work he had originally contracted to do himself and was paid for. But yet, the trial court awarded full damages on that issue. Additionally, Mr. Crawford also pointed out part of his testimony was work done by others. Who are these other people? What work did they do? Why is he including his figure? And was this work, again, contracted with the Hancocks to be done and other people had to finish? Or was this work that other subcontractors were doing for Mr. Crawford and had a separate deal going on with Ms. Silk? We don't know. The testimony wasn't there. Other items that Ms. Silk claimed damages for, there was no testimony or evidence as to any figure from her side as to what the cost for damages was. For instance, this deck that was built. She stated in her testimony that it was cheaper than the pouring concrete porch. That's what she said. She produced no estimate showing that pouring the concrete was going to cost twice as much, $100 more. It's no different than just saying it costs more. How do we know? The evidence does not support her getting the full amount of a deck award when we don't know if that was the proper amount of damages to be awarded. There was that evidence not presented for the court to make a comparison. You replaced this item with a deck or a porch. We only have half the story. Also, she claims there was numerous deficiencies, stating various things like chalk lines were erased, there was rust stains. We don't hear how much it costs to repair those or erase those or modify, take care of those. We just hear a sum total at the end of this amount of money. How much does it take to repair those? We don't know. But was that proven that the Hancocks left that chalk line? I don't know. She testifies there was rust stains. What was the amount? Did it take 90% of that figure she asked for in that particular category to repair those rust stains? I don't know. Testimony and evidence wasn't presented that shows these categories, this was there, what materials were used, and were the Hancocks even responsible for those materials or were materials used from some other job site? We just don't know. Additionally, the Hancocks were charged rental fees. Now, going back to the very beginning, Dianne Sill was the general contractor. What's the job of the general contractor? Produce the finished product for the owner. She's also the owner. Never has there been testimony presented or evidence that shows that she has informed the Hancocks, even though this is an oral agreement, that if you don't get this building built by a certain date, I will charge you. That's not there. Is that a reasonable thing for a general contractor to do, to inform the deadlines and keep people on task? Yes. But she says, oh, I have things off to the side that need to be restored you're responsible for them. Hancocks were never told who we are. If they were, it was never testified or presented to the trial court. There was no evidence or testimony that some of these repairs were even the Hancocks' fault. We had testimony from Rod Painting that his number, I believe $730, part of that, we don't know what part, was to re-level insulation. He was told in his testimony that that insulation had to be re-leveled because other people were out there. We don't know if that other people were other contractors, but it seems to imply that it wasn't the Hancocks. Why are the Hancocks being held liable for a portion of this gentleman's fees to re-level something that they may not have done? We just don't know. Secondly, Rod Paint also submitted part of his estimate was for replacing the de-brimmed insulation. Again, underlying theme, and so was the general contractor. The Hancocks didn't approve the insulation for people to come in and install the insulation. They weren't the general contractor. The general contractor's job was to keep people on task. If they didn't have the siding up, how was it their responsibility if they never told the insulation guy to come in and put the insulation in to be held liable? Oh, because they didn't get the siding put up in time. Who's responsible? The general contractor, not someone who has a different agreement with the general contractor. Next big issue would be the siding. There was a lot of testimony about this siding. It was a very particular kind of siding. It was very unattractive to what Ms. Sill does and not what she wanted. There was no testimony that showed other than the Hancocks testified that they had stolen it per their directions. We heard several experts and things of that nature. No testimony that the Hancocks in fact damaged it or that repairs that had to be done in such a way couldn't be done piece by piece. There was the assumption that if you're not careful by one of the experts, you may have to replace all of the siding. In the end, Ms. Sill asked for an award of replacing all of the siding with total labor to replace it. In fact, we never had any testimony showing that all of the siding needed to be replaced. They'd have salvaged a couple pieces, one side. Testimony was limited to various areas of the house, but it wasn't a broad statement of all of the siding is ruined. It all must be replaced. We just don't know. It never went to that further step to find that out. Essentially, it comes down to we just don't know what her accurate damages were. There wasn't the testimony presented that says what in fact were your real damages. The trial court, I believe, was swayed by her testimony that she was just this nice little old lady who they made an agreement. But then how were the Hancocks to be responsible for something that they might not have agreed to or wasn't proven? We're holding them liable for something the proof isn't there. She was not required to prove up her damages by the trial court. The trial court just, again, rubber stamped what she asked for in a post-trial memorandum. Testimony was not presented as to each category, broken down thusly, and at the end I am asking for this amount. Here's the evidence. It comes in, has a back door. Here's the judgment. That's the amount of the award. The second issue is the denial of the appellant's counterclaims. The trial court ruled that their performance was less than substantial performance in a workman-like fashion. That's a mouthful. We believe that that, once again, goes against the manifest way of the evidence. Nearly all the claims that Dianne Soule makes they're quite lengthy, other than the large portion of society, are cosmetic in nature, little things. There's a rust stamp, there's a chalk line, things weren't cut off here. She's not saying that they didn't complete the house. She never testified that they didn't complete the house. She never testified the house wasn't livable. We don't have a situation where the Hancocks built one wall, left the job, and this woman's sleeping on the floor. With one wall, the wall blows over. They built her a home. The totality of her claims is a very small part of this house. We have no testimony that she had any problem with them laying the floor, the joists, building two-by-four stud walls, putting windows in, hanging doors, putting trusses on, putting a roof on. Yet, all these things come through in such a way that it makes it sound like this house is unlivable and ready to be condemned. In fact, she lived in the house, she got the benefit of living in the house, and taken as a whole the Hancocks entitled to the work that they performed. Now, if they didn't perform something, there should be a set-off. They performed some work, though. It's obvious that she said there was a house built, but no set-off or any kind of counterclaim of theirs was ever granted so that they can come back and say, yes, we may have done this, we may not have done that, but we provided X amount of the work for you. We built you a home. You have problems with it, but we built you something. We didn't agree to start something and stop. By denying her a counterclaim, it all boils down to the original contract, roughly $25,000 agreed to for the labor to build this home. The trial court awarding this damage is without the evidence to support it. Essentially, she gets this home built for her for less than $1,000 or somewhere in that neighborhood. Now, I don't believe that the Hancocks did less than that much work, less than $1,000 worth of work on this house, or that the evidence shows that there was this amount of damage that they should be held responsible for. This is akin to going to a person, purchasing a car, finding the next day there's a scratch on there, saying, I want you to fix the scratch, and now I want the car for free. I'm not going to pay you for it, because I found a cosmetic or a small problem. The car still runs, doesn't it? Yes, it does. The house was built. It was. There was problems with the house. Those were there. But the evidence and testimony did not come out in such a way that the court could make an informed decision as to what accurate damages were. A total sum was just submitted. It was a rubber stamp. We don't know if that's an accurate representation. Why should people be held liable for something that's not their fault? If it is their fault, we should have heard more testimony about it. But we never got that point. We don't know what the breakdown law was. It's just a, here's a figure, go with it, and the court approved it. For all these reasons, and the reasons that I didn't get to in brief that are stated there, we'd ask the court to reverse the judgment against the Hancocks as to our first issue, and reverse the judgment for Ms. Sill as to the counterclaim, or any alternative to remand this back to the trial court so the trial court can make an accurate determination and find out what exactly should have been awarded to Ms. Sill in advance. Thank you. Okay, thank you. And Mr. Terlesi? Please support and counsel. The overriding lesson in this case is don't write a construction contract on the back of a piece of scrap paper. Unfortunately, clients continue to do that, I guess fortunately for lawyers, and that's why we have so much construction dispute business, because people continue to do that. But that's the facts that we've got here. A little handwritten contract. So essentially it was an oral contract. Some notes on a scrap of paper, that's all we have. What is probably as insightful in this case is what is not at issue with respect to what is at issue. And what is not at issue in this case there are no procedural questions, there are no evidentiary questions, there are no really questions of law. There is one question in this appeal, and that is manifest weight. And as counsel for there is no area of the law where the appellate court gives more deference to the trial court than in exercising credibility determinations. As recited in the Supreme Court case of Eykanner v. Gross, nowhere is it more important that the appellate court justly defer to the trial court's determination than when the trial court is weighing issues of credibility and weighing conflicting testimony. And that's exactly what we have here in most of these issues here. The trial court actually made a written finding in this case that the evidence overwhelmingly supported the plaintiff. And I think a fair reading of the record in this case indicates that the trial court was absolutely correct. It seems that with respect to the plaintiff's complaint, the issue is really not one of liability here being raised by the defendant, but one of proper calculation of damages. I would point out that the three issues of damages alone account for $20,000 roughly of the $24,406 verdict here, and that is first siding, that was about $13,000 altogether between labor and the cost of replacement siding, around $3,000 for the electric, and Mr. Crawford, who was the finished contractor, had a specific itemized written bid that was admitted into evidence of about $4,300 to correct deficiencies that he testified as an experienced contractor would cause to fix. He had those totals up, but it's almost $20,000 right there. Now, with respect to the siding, this is one area really I'm not sure there was a lot of disagreement on the evidence. By far, the biggest single element of damages. Mr. Crawford, again, an experienced contractor, had no bone to pick. He was subpoenaed to this. He was the finished contractor. For whatever reason, Ms. Sill had a rough-in contractor by Hancocks, and according to the evidence here, the rough-in job is to shell the house, put the roof on, put the windows in, and then the finished contractor comes in, does the drywall, all the finished detail, carpentry work on the inside. He had no dog in this fight. He was subpoenaed to appear. He testified that the siding job was unworkmanlike and unacceptable. The trial court had dozens of pictures of this siding job, showing large gaps. This was a nice house. You can look at it from the pictures, and this was premium, the top grade siding, the cement fiberboard siding sold by this particular company, James Harden. That very expensive top-of-the-line siding. Huge gaps between the boards where you could see the insulation underneath. Cracks, misalignments throughout. I think a fair reading of this record, certainly the reading and the inference, not the inference, but the clear, explicit testimony in this case was this particular siding is not like cheap aluminum or other plastic-type siding where if you get a crack or a hole in one particular length of it, you tear it out and you replace it. This cement fiberboard siding is not like that. You can't work with it like that. When you go to pull it or hammer or something, you're going to crack it, you're going to break it. Mr. Crawford testified to that, and essentially their own expert on the siding issue, Mr. Floyd Purcell, there were two Purcells in this case, but their expert, Mr. Floyd Purcell, who's worked in a lumberyard for many, many years, I think essentially agreed. When he looked at the pictures, he said, yes, that would not be an acceptable job to a reasonable homeowner. He further conceded on cross-examination that there was really no easy way. You couldn't just replace individual boards with this particular type of siding. And the figures on this, there's no guesswork involved in here. There was an invoice for the exact cost of the siding she paid to side her home originally. The evidence was absolutely uncontradicted that the only way to fix it was to tear it off and redo it. The cost of the replacement siding was over $8,000. Mr. Hancock himself testified that the labor to put that siding up would be $4,800. That's just simple arithmetic. With respect to the electric, again, the evidence was undisputed that what should have happened here was that Hancock was to do the rough-in electric, then Mr. Crawford was to come through and do the finish electric. There was no contemplation in this original understanding here of any kind of electrician to come in here and do this. There was also, I think, undisputed in the record, in the testimony of both plaintiff and defendant's witnesses once again, that this electric, rough-in electric job, as displayed in the record, people who inspected it, was not workmanlike, was not code-compliant, and in fact was a fire hazard as done. Now, there was some suggestion from the defense that their job was, after the fact, sabotaged, which had no evidentiary basis or support whatsoever, why anybody would do that or had the motive to do it, and I think the court clearly rejected that. But both their electric expert, Mr. Taylor, and the electrician that ultimately redid the job, Mr. Carl Purcell, agreed that the job as depicted in the photos, which was the way it was when the defendant got done, was not workmanlike, was not compliant with code. Mr. Purcell's labor cost to redo that work was the figure that the trial court awarded. That did not include any finish electric work? His bill is simply to do the rough-in work again? His job was to, as my understanding, my recollection from the testimony, was to correct the improper work that had been done. So he had a bill in excess of that to do the finish work? I'm not sure that's correct, Judge. I think what happened was that, if I remember the evidence correctly, is that Mr. Crawford, in fact, started to do the finish work and was having all sorts of problems with things not operating correctly, went up into the crawl space, saw that there were wires spliced, all sorts of things that were not proper, took those photographs that were admitted into evidence, and at that point said, this is beyond me, called Mr. Purcell in. Mr. Purcell, for this roughly $2,700, fixed it. His point is that it included the finish work in addition to correcting the work they had contracted to do. And our point is, I think the plaintiff's point is, that she had a fixed bid from Mr. Hancock, just a flat bid to do the rough-in. She had a fixed bid from Mr. Crawford to do the finish. And she ended up paying almost $3,000 on top of that to an electrician, which was never contemplated. And that's why it's direct damages here. There is a bill admitted into evidence from Mr. Crawford as to itemize to the penitent as to what it would cost his bid to fix the various deficiencies. Some cosmetic, some substantive deficiencies of $4,334, and he testified to that. And the trial court accepted that those were, in fact, deficiencies that, in fact, should have been corrected and rewarded that as part of the damage. With respect to the debt, in fact, the evidence, I mean, the testimony was from Mrs. Sill and I think Mr. Hancock essentially agreed that he had made a mistake in doing that porch, misinterpreted the roof line, and there was only two ways to correct it, tear it out and re-pour it or build a deck over it to hide it. Mrs. Sill's uncontroversial testimony was the cheaper alternative was to build the deck. That was direct additional damages which should have never been incurred in this case. There was no contrary evidence presented by the defendant here that, well, it would have been cheaper to re-pour the, tear out the old porch or re-pour a new porch. So that is the only evidence in this record. Mrs. Sill may not be a contractor but she can certainly testify that I looked at the two alternatives and this was the cheaper one. I mean, she doesn't need any expertise to be able to testify to that. On some storage rental, it's a fairly minor part of this thing, but I think the evidence was clear that the original oral contract was that he guaranteed she'd be in this house by Christmas. She wasn't until, I think the evidence was April. So I think every one of these elements of damages that the court awarded here, I mean, these aren't figures the court just pulled out of the air. There's admitted evidence, documentary evidence on every single one of these. There's a bill or a pay bill or an estimate as to the things that hadn't been done from experts such as, for example, Crawford. And that certainly provides a solid evidentiary basis for the court to determine that those were damages that were incurred. And, I mean, I think the argument that well, that's the total amount she saw is no argument at all. I mean, the answer to that is, so what? If it had evidentiary support, it had evidentiary support. In this record, it clearly did, and as the trial court characterized it, overwhelming evidentiary support. With respect to the counterclaim, the trial court, I think, very properly found that the defendant abandoned this contract unfinished. He left a bill and a bathtub in this house. He'd been paid about two-thirds of what his total contract price was. He left a bill in the bathtub for the balance when this house wasn't done, said, I want paid in full and I'm tired of the games, something along those lines, and she refused. Not only was she justified because he had not finished the job yet, but she was also justified in that part of that bill he submitted was for recall and the evidence. There was an original dispute as to whether the oral contract, whether the rough-in for the electorate was an additional $1,600 or something, or if it was part of the overall bid of, I think, $2,500. The trial court found as a factual matter, again, a credibility issue, that that rough-in was included in the $2,500 and was part of the original oral contract. Well, part of what he was demanding that she pay him was this in addition, which the trial court found was not part of the contract. So she was certainly justified in not paying that, in addition to justified in not paying when the job wasn't done, and she had left him this punch list saying, these are the items that you still need to do to finish this up. At that point, he simply refused and he took his tools and he went home. I suggest that he should get paid. In fact, he was paid, like I said, approximately two-thirds of what his contract price was. I think it was well within the atmosphere and discretion of the trial court to find that she did not have to pay him the full contract price for a contract that wasn't done, and that he obeyed it. So I think this is a case where the evidence, as the trial court correctly stated, overwhelmingly supported the plaintiff's view. As I said in our brief, I think a court found for the defendant that it would have been against the manifest way of the evidence in this case. But every nickel that was awarded here, every finding the trial court made, I think has got evidentiary support. I think the defendant's appeal is simply, we don't like the decision of the trial court here and we'd like a better decision from this court. Unfortunately for them, that's not the law. Thank you. Any rebuttal? I want to stay in evidentiary support of these figures. There is testimony, if not evidence, for most of these. However, there needs to be enough for the trial court to be able to render a proper decision. All these estimates figures or whatever was submitted to the court, again, there's no division. There's no accurate division amongst these numbers based on the testimony and evidence presented that correctly or accurately reflects what these people did. If I submit a bill to someone for $1,000 and don't tell them what I did, how do they know what they're getting from me? Are some of this stuff materials? What was the cost of my labor? I don't know. There's conflicting testimony about this. When someone says this is part of this or this is part of that, what part? We don't know. And how can one party be held liable if you just don't know what's there? It's merely to say we think this is an accurate number without first having found out if that, in fact, is the case that that needed to be done. For instance, the citing. We don't know if every piece of citing needed to be replaced. We didn't have further testimony that said every single piece. We had some testimony from experts that that's more than likely the case. It's the big ticket item. But all the small parts. Each little thing that amounts to something. And even if it's just $1 more than it should have been, the whole Hancock's liability that they're not responsible for is against the manifesto. If someone testifies that I think it was cheaper but we don't know what was cheaper and you submit a bill, how do we know? No one knows. The trial court had the determination to make that is clear. But, taken as a whole, it was against the manifesto to award that amount without having further evidence or testimony at another stage or inquiring further or just presenting something more so that the court can make an accurate determination that everyone knows this was the proper amount to be given. Finally, as counsel was talking about, that Hancock's would be paid approximately two-thirds. Once they paid the judgment, they're paid nothing. They completed the job and they received no benefit from it. They nailed up one stick and that's the amount of credit they get for it. Nothing. They built a home for this lady. There was no set-off as to the other damages claimed for the work they did do. If they were paid for two-thirds of the work, why wasn't two-thirds of it being attributed to a set-off? Why wasn't some other number used? It wasn't. It was the rubber stamp on the total amount of damages that Ms. Sill asked for and that's what she got. It was not supported by the evidence of testimony. Thank you.